UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

           Plaintiff

vs.

CESAR GONZALEZ,

           Defendant.

Case No. 26-mj-4166-DHH

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION

The United States of America opposes defendant's motion to revoke the order of detention in this matter. As detailed below, the Magistrate Court in the Central District of California (Riverside) properly found that Gonzalez poses a danger to the community, which no conditions or combination of conditions can adequately address and that he poses a serious risk of flight. Gonzalez's continued detention pending trial is appropriate.

### PROCEDURAL HISTORY

On May 5, 2026, Gonzalez, along with seventeen co-defendants, was named in a Criminal Complaint charging him with conspiracy to distribute and possess with intent to distribute a controlled substance. An arrest warrant of even date was issued by the Magistrate Court (Worcester).

On May 14, 2024, agents arrested Gonzalez in Rancho Mirage, California. He made his initial appearance before U.S. Magistrate Judge Sheri Pym on the same date. The government moved for detention both on the grounds of a danger to the community pursuant to 18 U.S.C. § 3142(f)(1) and as a flight risk pursuant to 18 U.S.C. § 3142(f)(2). A detention hearing was held

the same day.  Following a presentation of the facts and argument from both parties, the Magistrate

Court granted the government's motion to detain based on Gonzalez's risk of flight and danger to

the community for the reasons stated on the record, contained in the official recording submitted

to the Court.[1]

For the reasons detailed below, the Court should order that Gonzalez continue to be

detained pursuant to 18 U.S.C. § 3142(c), and (e) pending trial.

### STANDARD OF REVIEW

The First Circuit has articulated that a party challenging a magistrate's order of release or

detention is entitled to a *de novo* review by the district court. *United States v. Tortora*, 922 F.2d

880, 883 and fn.4 (1st Cir. 1990) (finding appellate review of district court order pursuant to

3145(c) involves "independent review" employing intermediate scrutiny while district court review

of magistrate decision is *de novo*); *see also United States v.  Oliveira*, 238 F. Supp. 3d 165, 167

(D. Mass. 2017) (district court review of magistrate order is *de novo*); *United States v. Marquez,*

113 F.Supp.2d 125, 127 (D. Mass. 2000) (same).  In conducting its *de novo* review, the Court may

hold a new hearing or accept the findings of fact made by the magistrate and elect whether to hear

additional facts and argument.  *Oliveira*, 238 F. Supp. 3d at 167.

### ARGUMENT

For the reasons set forth below, the Court should accept the findings made by Magistrate

Judge Pym and affirm the Magistrate Court's order of detention in this matter.

---

[1] After making findings and concluding Gonzalez was to be detained, the Magistrate Court indicated that the decision was without prejudice and could be taken up in Massachusetts.  The government's position is that may be accomplished either by seeking review before this Court or by seeking clarification in California, not by having the Magistrate Court in Massachusetts review the detention decision.

A.    <u>Gonzalez Remains a Danger to the Community and Presents a Risk of Flight</u>

Accepting the facts found by the Magistrate Court and applying *de novo* review, this Court should find that Gonzalez presents an ongoing danger to the community.  Specifically, Gonzalez shipped multiple kilos of cocaine from California for further distribution in Massachusetts.  As set out in the detailed Complaint Affidavit, the Drug Enforcement Administration (DEA) conducted an extensive investigation into the drug trafficking organization (DTO) run by Hai S. Pham. [Attached as <u>Exhibit 1</u>][2]

From January through July 2024, text messages contained within the search warrant return from Pham's iCloud account showed that Pham was in regular contact with his co-defendant Andres Montemayor to coordinate kilogram-quantity shipments via UPS from Gonzalez in Riverside County, California to Pham in Central Massachusetts.  On multiple occasions, Montemayor directed Pham to send quantities of cash to addresses in Texas and California.  Pham, in turn, directed shipments of approximately twenty kilograms of cocaine to be shipped to his residence in Gardner, Massachusetts, as well as to co-defendant Courtney Spaulding's residence in Leominster, Massachusetts.

One of those shipments was intercepted by law enforcement.  On Sunday, July 21, 2024, Pham texted Spaulding, "Hey Courtney," then "Tuesday It'll be there."  On Tuesday, July 23, 2024, Spaulding texted Pham about the pending delivery that day, asking "What time?" Pham replied, "Not sure," then "Ima call my buddy and see if he even sent it."   In the early morning hours of Wednesday July 24, 2024, Pham texted Spaulding, "Anyway you can call out Wednesday and catch that box for me," then "I'll pay you $400 total," then "It's coming before noon Wednesday

---

[2] The portion of the 69-page Affidavit that tracks Gonzalez's role in the conspiracy is found at pp. 9-22, ¶ ¶ 26-56.

[July 24, 2024]." Spaulding replied, "It's coming today for sure [?]" then "I called out." Pham texted Spaulding, "Yeah," and "Thank you" and "Should be there before noon."

Spaulding texted Pham at 11:57 a.m. "Nothing yet" followed by, "Does it say it's delayed? No trucks have come up so far." Pham replied, "I'll find out." Later that day, Spaulding sent Pham a text message, "Still nothing, it's still saying it for delivery?" then "Tomorrow I'm around until my appointment at 2pm in case it's coming tomorrow morning." Pham replied, "Ok let's see tomorrow." Spaulding texted Pham, "Nothing so far. I called out yesterday for nothing it seems." Pham replied, "I'll pay you" then "It's not coming," then, "I'll give you $200 for taking the day off," then "Unless you get paid more than that a day," then "And 10 of those things." Spaulding replied to Pham, "that works. I appreciate that. Thank u."

Unbeknownst to Pham and Spaulding, the reason the package never arrived in Leominster is because on July 23, 2024, it was intercepted by DEA SA James Perlez and DEA TFO Michael Callahan while they were conducting parcel inspections at a UPS Distribution Center in Riverside, California. SA Perlez and TFO Callahan identified the parcel because of several indicators related to narcotics trafficking. The parcel, a brown-colored cardboard box, had a "UPS NEXT DAY AIR" shipping label which is among the most expensive services UPS offers to ship parcels.[3]

A police K-9 trained in the detection of narcotics alerted on the parcel. SA Perlez then obtained a Riverside County search warrant and seized approximately three kilograms of cocaine. The cocaine was field tested and returned a result of presumptive positive for three kilograms of powder cocaine. According to Riverside DEA, their additional investigation revealed that Gonzalez shipped the seized package from UPS Store #5027, located at 1440 Beaumont Avenue,

---

[3] The parcel was addressed to Spaulding in Leominster under a pseudonym.

in Beaumont California.  On July 31, 2024, TFO Callahan visited UPS Store and reviewed an 18-second video and still photos of the surveillance footage shown below:



On the same date, agents canvassed for additional surveillance footage from nearby stores. Stater Brother's Market (a grocery store next to UPS) provided parking lot footage showing Gonzalez arrive at the northwest parking lot in a 2-door white sedan with distinctive features (sharp curves on the hood, white mirrors, tinted windows, rectangle shaped headlamps with lower fog lamps, and black tires and rims).  At approximately 4:40 p.m., Gonzalez exited from the 2-door white sedan and walked toward The UPS Store. At approximately 4:46 p.m., Gonzalez returned to the 2-door white sedan and exited the parking lot.  The Automated License Plate Readers (ALPRs) for 2-door white sedans in the area before and after 4:46 p.m. returned photos of a 2-door white Mercedes bearing CA license plate number 9BUF214 (pictured below):



NB Beaumont Ave @ 5th,
7/23/24, 1635 Hrs

A California DMV check of the suspect vehicle revealed a 2011 Mercedes registered to an individual with Gonzalez's same last name, residing at 163 Madrid St., Rancho Mirage, California. A further law enforcement database search of 163 Madrid St., Rancho Mirage, California revealed prior law enforcement contacts for Gonzalez with a current home address of 2205 W. Acacia Ave. Space# 85, Hemet, California.[4] Additional ALPR checks revealed the license plate number 9BUF214 was captured in the driveway/carport of 2205 W. Acacia Ave. Space# 85, Hemet, California:



[4] On February 6, 2024, Montemayor texted Pham a picture of a hand-written note, "Cesar Garcia 2205 W. Acacia Ave SPC 85 Hemet, CA 92545" and then Pham texted "Ima go send it."   After that, Pham then sent at least four more shipments of cash to this address from Massachusetts.

These facts all support detention pending trial because they establish the serious nature and circumstances of the crime charged (3142(g)(1)), the heavy weight of the evidence against Gonzalez personally in this case (3142(g)(2)), and support the presumption that no set of conditions could reasonably ensure the safety of the community (3142(e)(3)(A)).  As for the history and characteristics of the defendant (3142(g)(3)), while a strong family foundation and ties to this community in California, including employment, typically would weigh in favor of release, here they are undercut by the defendant's commission of the instant criminal conduct while on probation.

Based on his conduct, the Court – like the Magistrate Court – should find that there is clear and convincing evidence that no condition or set of conditions can reasonably assure the safety of the community.  In addition, the government maintains its contention that Gonzalez also posses a serious risk of flight.  Though he tenders his past performance while on bail, the government notes that his recent conduct while on probation and the significant term of incarceration he faces pursuant to the instant charges merits the finding that he poses a serious risk of flight.

B.  <u>Defendant's Arguments Do Not Support Overruling the Magistrate Court's Order</u>

The defendant has not offered facts that sufficiently rebut the presumption of dangerousness, and his proposed conditions of release fail to address his ongoing danger to the community. The Magistrate Court's order comports with the mandate to make "individualized judgments about" the defendant that is before the Court. The defendant's memorandum in support of his motion sets forth in detail the standard for determining the issue of pretrial detention, a standard which was followed precisely by the Magistrate Court.  However, he fails to set forth facts sufficiently address the presumption that he remains a danger to the community. Accordingly, the government moves the Court to find that the government has established by clear

and convincing evidence that no conditions of release will reasonably protect the community from

the danger posed by Gonzalez, that the government has established by a preponderance of evidence

that Gonzalez poses a serious risk of flight, and deny his motion to revoke the detention order in

this matter.

Respectfully submitted,
LEAH B. FOLEY
United States Attorney

By:   */s/ Danial E. Bennett*
Danial E. Bennet
Assistant U.S. Attorney
Donohue Federal Building
595 Main Street
Worcester, Massachusetts 01608

Dated: July 16, 2026

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served counsel of record for the Defendant a copy of the foregoing document by ECF.

*/s/ Danial E. Bennett*
Danial E. Bennett
Assistant U.S. Attorney

Dated: July 16, 2026